**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Research Institute at Nationwide Children's
Hospital,

                    Plaintiff,        :    Case No. 2:19-cv-4574

    - vs -                             Judge Sarah D. Morrison
                                    Magistrate Judge Chelsey Vascura

Yu Zhou, *et al.*,

                                :

                    Defendants.

## OPINION & ORDER

Defendants Avalon GloboCare Corporation and GenExosome Technologies,

Inc. seek dismissal of Plaintiff Research Institute at Nationwide Children's

Hospital's ("RINCH") federal and state trade secret counts against them. (ECF No.

50.) RINCH opposes (ECF No. 58) and the moving Defendants Reply (ECF No. 62.)

After due review, the Motion is **DENIED**. (ECF No. 50.)

### I.    BACKGROUND

The following facts are taken from the Complaint, documents referenced in

the Complaint, and judicially noticeable documents.[1]

RINCH is a pediatric medical research institution that employed Defendants

Dr. Yu Zhou and his wife Dr. Li Chen as research scientists. Dr Zhou and Dr. Chen

researched exosomes, "the smallest type of" "membrane-bound vesicle[s] produced

---

[1] Both sides agree that the Court may utilize Fed. R. Evid. 201 to take
judicial notice of Dr. Zhou's and Dr. Chen's guilty pleas and plea agreements in
Case Number 19cr-163 which proceeded before the Undersigned.

by a cell and comprising one or more cell-derived components such as RNA, DNA, protein, and lipids contained as 'cargo' within the vesicle." (ECF No. 1, ¶ ¶ 17-18.) Their positions gave them knowledge of, and access to, RINCH's exosome trade secrets. *Id.* ¶ 27. Dr. Zhou and Dr. Chen each executed confidentiality agreements regarding their work and both were subject to RINCH's policies prohibiting their use of RINCH's trade secret information outside of RINCH without its knowledge and permission. (ECF No. 1, ¶ 35)

Dr. Zhou and Dr. Chen stole RINCH's exosome-related trade secrets and used that information to establish Beijing JieTeng Biotech Company, Ltd. ("Biotech") in China without RINCH's knowledge and permission. *Id.* ¶ ¶ 59, 62. Biotech sold exosome-related kits and services. *Id.* ¶ ¶ 60-62. *See also  U.S. v. Zhou, et al*, 19cr-163, ECF No. 127. Dr. Zhou and Dr. Chen also used the trade secrets to apply for, and obtain, patents about exosomes in China. *Id.* ¶ ¶ 42, 63, 73, 78-79.

Avalon is "a healthcare management provider and biotechnology developer that is dedicated to integrating and managing global healthcare resources, empowering high-impact biomedical innovation and technologies, as well as engaging in bio-venture investment." *Id.* ¶ 66. GenExosome is Avalon's majority-owned subsidiary. *Id.* ¶ 68. GenExosome closed an Asset Purchase Agreement ("APA") of all of Biotech's assets, including intellectual property "pertaining to the business of researching, developing and commercializing exosome technologies." *Id.* By executing the APA, Dr. Zhou represented and warranted that he owned all of the intellectual property and that the APA did not violate any agreements Dr. Zhou had

2

with third-parties. (ECF No. 51-1.) Biotech and GenExosome executed a separate

Stock Purchase Agreement ("SPA") wherein Biotech warranted the same. (ECF No.

51-2.)

In 2020, Dr. Zhou and Dr. Chen pleaded guilty to theft of trade secrets, wire

fraud, and conspiracy to commit both offenses for their described conduct. (19cr-163,

ECF Nos. 119, 128.)

RINCH's Complaint asserts claims for breach of contract against Dr. Zhou

and Dr. Chen. RINCH also asserts federal and state trade secret misappropriation

counts against all defendants under the Defend Trade Secrets Act, 18 U.S.C. §§

1839(5)(A) & (B) ("DTSA"), and Ohio's Uniform Trade Secrets Act, Ohio Rev. Code

Ann. §§ 1333.61(B)(1) & (2) ("OUTSA"). (ECF No. 1.) RINCH settled and dismissed

its counts against Dr. Zhou. (ECF No. 73.) RINCH resolved its claims against Dr.

Chen via default judgment. (ECF Nos. 78-79.) Left for disposition are RINCH's

misappropriation claims against Avalon and GenExosome ("Remaining

Defendants"), and it is those claims that are the subject of the instant Motion. (ECF

No. 50.)

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all

factual allegations as true and make reasonable inferences in favor of the non-

moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing

*Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain

statement of the claim showing that the pleader is entitled to relief" is required. *Id.*

(quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

III.    **ANALYSIS**

The Motion asserts three grounds for dismissal. One, that the Complaint lacks sufficient factual allegations that Avalon or GenExosome had reason to know about Dr. Zhou's and Dr. Chen's misappropriation. (ECF No. 50, PageID 222.) Two, that the Complaint's factual allegations are implausible in light of "a number of other allegations in the Complaint, documents incorporated into the Complaint, and other judicially noticeable materials." (*Id.*, PageID 225.) And three, that the Complaint does not directly allege Avalon engaged in misappropriation. (Id., PageID 229.) Each is unpersuasive.

### A. The Sufficiency of the Allegations

RINCH's remaining misappropriation counts are indirect in nature. Both the DTSA and the OUTSA create private causes of action against an individual or entity that indirectly acquired, disclosed, or used a trade secret and knew, or had reason to know, that another directly misappropriated the trade secret via improper means. 18 U.S.C. § § 1836, 1839(5)(A) & (B); Ohio Rev. Code. Ann. §§ 1333.61(B)(1) & (2). Defendants assert the Complaint lacks a sufficient factual predicate satisfying the knowledge component of the misappropriation counts.

The Complaint alleges:

● RINCH is considered an industry leader in exosome-based therapeutics. (ECF No. 1, ¶ 15.)

● RINCH staff hold and have applied for numerous patents involving exosomes. *Id*. ¶ ¶ 21-26.

● At the time of the APA and SPA, Dr. Zhou's public Linked-In profile stated he researched exosomes for RINCH. *Id*. ¶ 39.

● "It was public information that Defendant Zhou's work [for RINCH] involved exosome research, and other research dealing with RINCH's Trade Secrets." (ECF No. 58, Page ID 492) (citing ECF No. 1, ¶ ¶ 39–40.)

● At the time of the APA and SPA, Dr. Chen's public Linked-In profile stated she researched exosomes for RINCH. *Id*. ¶ 44.

● "It was public information that Defendant Chen worked for RINCH on various projects related to . . . exosomes. . . ." (ECF No. 58, Page ID 492-93) (citing ECF No. 1, ¶ ¶ 43–44.)

● "Avalon was aware of Defendants Zhou['s] and Chen's work at RINCH and worked with them, and potentially others, to set up companies in China and/or the United States in order to acquire, develop, exploit, and commercialize the RINCH Trade Secrets."  (ECF No. 1, ¶ 67.)

● "It was public information that Defendants Zhou and Chen filed patent applications in China regarding the same technology that RINCH patented in the United States." (ECF No. 58, Page ID 492) (citing ECF No. 1, ¶ ¶ 42, 90, 125.)

● "GenExosome and Avalon were aware that Defendants Chen and Zhou were still employed by RINCH" when they filed their Chinese patent applications. *Id.* ¶ 79.

● Avalon's "participation in the industry, access to Defendants Zhou and Chen's biographic data and their Employment Agreements, among other reasons" establishes that "GenExosome and Avalon also had actual or constructive knowledge that the information described herein and which GenExosome and Avalon obtained from Defendants Zhou and Chen constituted RINCH's trade secrets." *Id.* ¶ 197.

Based upon those allegations, RINCH argues the Complaint establishes a sufficient factual predicate. Arguing the opposite, Remaining Defendants label some of the highlighted allegations as "conclusory" and "bare" while ignoring the others. (ECF No. 50, PageID 225-25.)

The Court concurs with RINCH that the allegations permit the reasonable inference that the Remaining Defendants had at least constructive knowledge of Dr. Zhou's and Dr. Chen's misappropriation. (ECF No. 58, PageID 491-496.) That is, the Remaining Defendants, as sophisticated healthcare companies involved in "high-impact biomedical innovation and technologies," would research and be familiar with publicly-available information regarding Dr. Zhou's exosome employment and patent history before entering into the APA and SPA with him and Biotech, respectively. (ECF No. 1, ¶ 66.) Such knowledge would give the Remaining Defendants a reason to know that Dr. Zhou and Dr. Chen neither created nor owned the trade secrets Biotech sold to GenExosome.

The Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## B. The Plausibility of the Allegations

The Remaining Defendants next attack the Complaint by arguing that its factual allegations are implausible. First, they cite to Dr. Chen's and Dr. Zhou's plea agreements wherein they admit that they told the Remaining Defendants they owned the exosome trade secrets. *Id.*, PageID 226. *See also* 19cr-163, ECF Nos. 119, 128. Second, the Remaining Defendants contend that Dr. Zhou's signature on the APA and Biotech's execution of the SPA constituted an express representation that Dr. Zhou and Biotech owned the exosome trade secrets. The Remaining Defendants argue the admissions and signatures render RINCH's knowledge allegations implausible. Not true. At best, the admissions and signatures establish that the Remaining Defendants had no direct knowledge of Dr. Chen's and Dr. Zhou's misappropriation. Neither negate the allegations that the Remaining Defendants should have known the statements were false.

Next, the Remaining Defendants point to the public nature of the APA and SPA to contend that "[e]ngaging in acquisition of intellectual property in such an open manner (including immediately disclosing it in public securities filings), renders implausible the allegation that GenExosome or Avalon 'knew or should have known' that the intellectual property they were acquiring was misappropriated." (ECF No. 50, PageID 227.) Yet, the Remaining Defendants did

7

not directly mention or describe the exosome trade secrets at issue in the filings. (ECF No. 58, PageID 498.) And, as RINCH points out, Dr. Zhou and Dr. Chen both utilized public means to benefit from the trade secrets they misappropriated from RINCH. *Id.* It is therefore plausible that the Remaining Defendants could have done the same. Thus, RINCH's knowledge allegations are not rendered implausible simply because the Remaining Defendants filed a publicly-available document about the APA and SPA.

The Remaining Defendants argue that the exosome trade secrets are not trade secrets at all. (ECF No. 50, PageID 227.) In particular, the Remaining Defendants assert that RINCH's "extensive" public disclosure about its exosome research served to negate the trade secret status for that research. *Id.* But the Complaint states "[w]hile some of RINCH's valuable intellectual property regarding exosome technology and exosome enrichment techniques was published in the publications . . . , other aspects learned by Defendants Zhou and Chen were held as RINCH trade secrets." (ECF No. 1, ¶ 30.)

The Court, drawing on its "judicial experience and common sense," determines that the Complaint "states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).

## C.     The Allegations that Avalon Engaged in Misappropriation

Lastly, the Remaining Defendants posit that the Complaint does not level misappropriation claims against Avalon directly. (ECF No. 50, PageID 229-30; ECF No. 62, PageID 548-49.) They are mistaken. The Complaint alleges:

8

● "Avalon was aware of Defendants Zhou and Chen's work at RINCH and worked with them, and potentially others, to set up companies in China and/or the United States in order to acquire, develop, exploit, and commercialize the RINCH Trade Secrets." (ECF No. 1, ¶ 67.)

● Avalon formed a joint laboratory with a Chinese hospital to utilize Avalon's "proprietary exosome isolation technology" to "accelerate the development of diagnostic and therapeutic applications . . ." which would "further establish Avalon's leading role in precision and regenerative medicine." *Id.*

● Avalon sponsored a conference in China wherein Dr. Zhou presented on the topic of exosomes. *Id.*, ¶ ¶ 161-163.

● Avalon "used, continue[s] to use, and intend[s] to use in interstate commerce the RINCH Trade Secrets misappropriated from RINCH." *Id.* ¶ 199.

Those allegations adequately allege misappropriation of trade secrets by Avalon.

## IV.    CONCLUSION

The Motion to Dismiss (ECF No. 50) is **DENIED**.

**IT IS SO ORDERED**.

s/Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

9